NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000562
13-NOV-2017
10:13 AM**

NO. CAAP-16-0000562

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF LLR

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-S NO. 15-1-0109)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, and Reifurth, J.,
and Ginoza, J., concurring and dissenting separately)

Appellant-Guardian Ad Litem Renata Foster-Au appeals
from an Order Revoking Jurisdiction and Terminating Foster
Custody ("Order"), issued on July 27, 2016, by the Family Court
of the Second Circuit ("Family Court").[1]  The Order awarded
guardianship of LLR, a minor child, to Interested Party-Appellee
RN, Mother's boyfriend.  RN is the natural father of LLR's
younger sister, LR, but not of LLR.

Foster-Au argues that the Family Court reversibly erred
by terminating the Department of Human Service's ("DHS's") foster
custody of LLR and awarding guardianship of LLR to RN[2] where (1)

---

[1]     The Honorable Keith E. Tanaka presided.

[2]     In its December 2, 2016 "Findings of Fact, Conclusions of Law, and
Order Revoking Jurisdiction of [LLR] to the Department of Human Services and
Terminating Foster Custody," the Family Court granted a motion for
reconsideration filed by RN in a guardianship case, FC-G No. 15-1-0061;
revoked jurisdiction over the underlying case, FC-S No. 15-1-0109; and
terminated foster custody of LLR.  In the July 27, 2016 Order, the court,
referring to said motion for reconsideration, appointed RN as guardian of LLR
and revoked jurisdiction over the underlying case and terminated foster
custody of LLR.

(continued...)

the preponderance of the evidence showed that LLR had been sexually abused by RN, and (2) the court failed to consider evidence of RN's domestic violence in the presence of LLR and LR (collectively, the "Children"); drug use in the home; and possible exposure of the Children to sadomasochism, or bondage, discipline, and sadomasochism ("S&M/BDSM"). Related to these arguments is Foster-Au's contention that the Family Court's Conclusions of Law ("COLs") 1-3 are wrong and Findings of Fact ("FOFs") 6-18 are clearly erroneous.

The Family Court did not err in terminating foster custody to DHS and awarding guardianship of LLR to RN because the challenged FOFs were not clearly erroneous and concerned matters within the province of the Family Court. Accordingly, COLs 1-3 are not wrong because they are based on FOFs that are supported by substantial evidence in the record.

COL 2[3/] is based on FOFs 6-18. FOFs 8, 9, 10, and 14-17[4/] consist of credibility determinations, which we decline to

---

[2/] (...continued)
The record of FC-G No. 15-1-0061 is not before this court, and there is no evidence before us that the Family Court consolidated FC-G No. 15-1-0061 with the underlying case, although it appears the court consolidated them for hearing. Nevertheless, because the court's appointment of RN as guardian of LLR is so intertwined with the revocation of jurisdiction and revocation/termination of foster custody, we address the guardianship appointment to the extent possible based on the record before us.

[3/] COL 2 provides, "Based upon a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court concludes that [RN] poses no sexual risk to [the Children]."

[4/] FOF 8 provides:

> The court has viewed the videos of L.L.R.'s purported disclosures created by [Grandmother] and considered all of L.L.R.'s subsequent disclosures and finds that all of L.L.R.'s disclosures of [RN]'s alleged sexual abuse, which began on or about July 13, 2014, are not reliable. The manner in which [Grandmother] created these videos and other writings and/or statements of L.L.R.'s purported disclosures is highly problematic and suggests that L.L.R. had been coached by [Grandmother]. Moreover, the unreliability of L.L.R.'s disclosures is corroborated by her recantation to her therapist, Una Starbuck, on October 15, 2014.

FOF 9 and 10 provide, in relevant part:

> 9. The court has weighed the testimony of [Grandmother], observed her demeanor while testifying,
> (continued...)

2

review because they consist of credibility-of-the-witness and weight-of-the-evidence determinations, and implicate the Family Court's prerogative to draw reasonable inferences from the evidence presented to it. *See In re Doe*, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001); *In re Doe*, 107 Hawai'i 12, 19, 108 P.3d 966, 973 (2005). Thus, we conclude that FOFs 8, 9, 10, and 14-17 are not clearly erroneous.

Additionally, FOF 9 (in part)[5/] and FOFs 10-13[6/] are not

---

[4/](...continued)
and finds that she is not a credible witness. . . .

10. The court has weighed the testimony of [Dr.] Marvin Acklin, qualified as an expert in the field of clinical and forensic psychology, observed his demeanor while testifying, and finds that he is a credible expert witness. . . .

FOF 14-17 provides:

14. The unreliability of L.L.R.'s purported disclosures of [RN's] alleged sexual abuse has tainted all of the opinions of witnesses [Grandmother]; Earan Larry-Fiakpuyi; Leslie Armstrong; Jocelyn Chang; Santo Triolo, Ph.D.; Virginia Cantorna, Ph.D.; Beverly Lundquist; Robin Winters; Chelsea Hill; [Foster-Au]; Mother; and Det. Anthony Krau. Based upon L.L.R.'s contaminated disclosures that were disseminated to these witnesses, the court finds that the testimony of these witnesses are [sic] similarly unreliable and not credible.

15. The court has weighed the testimony of [RN], observed his demeanor while testifying, and finds that he is a credible witness.

16. The court has weighed the testimony of Mother, observed her demeanor while testifying, and finds that she is not a credible witness.

17. The court has weighed the testimony of Michelle Goldberg, Skip Goldberg, Trisha Bissett and Shawna Collard; observed their demeanor while testifying; and finds that they are credible witnesses.

[5/] The remainder of FOF 9 provides:

The court finds that [Grandmother] has demonstrated a confirmatory bias against [RN]. She had searched for and recorded numerous allegations that [RN] had sexually abused L.L.R. due to her preexisting beliefs, hypotheses or fears. [Grandmother's] confirmatory bias has completely corrupted, contaminated and tainted all of L.L.R.'s purported disclosures, which the court finds cannot be fixed. Moreover, [Grandmother's] confirmatory bias also corrupted, contaminated and tainted all of the witnesses that she had discussed L.L.R.'s purported disclosures with,

(continued...)

clearly erroneous based on the Family Court's finding that Dr. Acklin was credible, and its adoption of his opinions and parts of his Report of Psychosexual Evaluation ("Psychosexual Evaluation"). As stated above, we decline to review the credibility-of-the-witness and weight-of-the-evidence determinations and, therefore, do not disturb the Family Court's characterization of Dr. Acklin's opinions. *See Doe*, 95 Hawai'i at 190, 20 P.3d at 623.

Furthermore, while FOFs 6, 7, and 18[7] are mixed FOFs

---

5/(...continued)
which made their testimony unreliable and not credible.

6/     FOFs 10-13 provide, in relevant part:

10. . . . . Dr. Acklin reviewed the evidence of L.L.R.'s purported disclosures for forensic reliability and conducted a psychosexual examination of [RN].

11. The court adopts Dr. Acklin's opinion and finds that all of L.L.R.'s purported disclosures that he reviewed appeared to be of "no forensic reliability whatsoever" and the product of a "terribly flawed evidentiary process" that contaminated all of L.L.R.'s subsequent disclosures during the Children's Justice Center's [("CJC")] interviews and to other professionals and/or witnesses.

12. The court adopts Dr. Acklin's opinion and finds that the "CJC interviews are fatally flawed by interviewer incompetence and the presence of fantastical information which appears to be the product of coaching of the child and encouragement to fabricate movie-influenced fantasy fabrication which impugn the reputation and conduct of [RN]."

13. The court adopts Dr. Acklin's opinion and finds that [RN] poses no sexual risk to [the Children].

7/     FOF 6 provides:

Based upon a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court finds that [RN] has not harmed L.R.'s and/or L.L.R.'s physical or psychological health or welfare, or subjected them to threatened harm by any acts or omissions.

FOF 7 provides:

Based upon a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court finds that [Grandmother] has harmed L.R.'s and/or L.L.R.'s

(continued...)

and COLs, they are not clearly erroneous because they are either supported by substantial evidence in the record, or are based on the Family Court's finding that Dr. Acklin was credible, and the adoption of his opinions and parts of the Psychosexual Evaluation. Accordingly, we conclude that there is substantial evidence to support the Family Court's FOFs. *See In the Interest of LR*, No. CAAP-16-0000512, 2017 WL 2829536 (Haw. Ct. App. June 29, 2017, as amended).

The Family Court did not err in finding that DHS failed to prove that RN harmed LLR or subjected her to a threat of harm, and COL 1[8] is not wrong. See Haw. Rev. Stat. § 587A-5 (Supp. 2013) (requiring that the Family Court base its finding that a child is subject to imminent harm on the facts and circumstances reported to DHS). *See also* Haw. Rev. Stat. § 587A-28(f) (Supp. 2013) (requiring the court to dismiss a petition if it finds a child has not been subjected to threatened harm by the child's family), and Haw. Rev. Stat. §587A-4 (Supp. 2013) (defining "harm"). Furthermore, COL 1 is supported by the Family Court's finding in the June 6, 2016 Order Continuing Foster Custody that "DHS did not show by a preponderance of the evidence that [LLR's] physical or psychological health or welfare was subject to imminent harm by the allegations of alleged sex abuse, alleged domestic violence, and alleged substance abuse by [RN,]" and sufficient evidence supports the finding. Further, sufficient

---

[7] (...continued)
physical or psychological health or welfare, or subjected them to threatened harm, by creating and disseminating 35 different videos and other numerous statements of L.L.R.'s purported disclosures of [RN]'s alleged sexual abuse to others, including potential witnesses.

FOF 18 provides, "Based upon a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court finds that [RN] poses no sexual risk to [the Children]."

[8] COL 1 provides:

Based upon a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court concludes that DHS has failed to prove, pursuant to Hawaiʻi's Child Protective Act, [HRS] § 587A-5, that [RN] has harmed L.R.'s and/or L.L.R.'s physical or psychological health or welfare, or subjected them to threatened harm by any acts or omissions.

evidence supports the court's finding that DHS failed to prove that RN exposed the Children to S&M/BDSM.

COL 3[2/] is not wrong because it is based on substantial evidence. The Family Court was not wrong to conclude in COL 3 that appointing RN as LLR's guardian was in LLR's best interest. *See* Haw. Rev. Stat. §§ 560:5-204(b) and -206(a) (2006) (the court may appoint a guardian if doing so is in the best interest of the minor) and Haw. Rev. Stat. § 560:5-205(b) (2006) (the court, after a hearing, may appoint a qualified person as guardian if it is in the best interest of the minor). As discussed, there was sufficient evidence to support the court's conclusion that RN did not harm or threaten to harm LLR. Moreover, evidence was adduced that RN, as LLR's de facto parent, had been providing her with a stable home and emotional, educational, and financial support for years.

Therefore, IT IS HEREBY ORDERED that the Order Revoking Jurisdiction and Terminating Foster Custody, issued on July 27, 2016, by the Family Court of the Second Circuit, is affirmed.

DATED: Honolulu, Hawaiʻi, November 13, 2017.

On the briefs:

Elizabeth C. Melehan
for Guardian Ad Litem-
Appellant

Nicole Forelli
(Legal Aid Society of Hawaii)
for Mother-Appellee

Erin Lowenthal, Julio Herrera
and Jay Goss,
Deputy Attorneys General,
for DHS-Appellee

Hayden Aluli
for Interested Party-Appellee

Presiding Judge

Associate Judge

---

[2/] COL 3 provides that "[b]ased on a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court concludes that it is in the best interest of L.L.R. that [RN] be appointed as her guardian."

CONCURRING AND DISSENTING OPINION BY GINOZA, J.

Appellant-Guardian Ad Litem Renata Foster-Au (**Foster-Au**) appeals from an Order Revoking Jurisdiction and Terminating Foster Custody (**Order Revoking Jurisdiction**), issued on July 27, 2016, by the Family Court of the Second Circuit (**Family Court**).[1] Foster-Au also challenges a number of the Family Court's findings and conclusions issued in its "Findings of Fact, Conclusions of Law, and Order Revoking Jurisdiction of the Minor Child to the Department of Human Services and Terminating Foster Custody," issued on December 2, 2016 (**FOFs/COLs/Order**).

Foster-Au contends on appeal that the Family Court erred by: (1) revoking its jurisdiction with regard to the Department of Human Services' (**DHS**) petition for foster custody of the subject minor (**LLR**); (2) finding that Interested Party-Appellee R.N. (**RN**) has not harmed LLR's physical or psychological health or welfare, or subjected LLR to threatened harm by any acts or omissions; (3) finding that LLR's videotaped allegations that RN had sexually abused her are not reliable; (4) focusing only on whether RN had sexually abused LLR, when there was evidence of RN's domestic violence against LLR's mother (**Mother**), illegal drug use, and practice of sexual bondage in his home; and (5) determining that it was in LLR's best interest that RN be appointed as LLR's guardian.

I concur with the majority to the extent that the Family Court's finding that RN "poses no sexual risk" to LLR is supported by underlying findings that are not clearly erroneous. Given the record, I cannot say that the Family Court clearly erred in finding unreliable LLR's videotaped disclosures that RN had sexually abused her. Similarly, the Family Court did not clearly err in finding that witnesses have been tainted due to the bias of LLR's grandmother and LLR's unreliable disclosures. The Family Court made a number of factual findings in its FOFs/COLs/Order regarding the allegations of RN's sexual abuse of LLR, it expressly weighed the testimony of the various witnesses, and it assessed their credibility. The credibility of the

---

[1] The Honorable Keith E. Tanaka presided.

witnesses is a crucial aspect in regard to these rulings, and assessing the credibility of witnesses is the province of the trial court. Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) ("It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact.") (citation omitted).

However, with respect to Foster-Au's remaining contentions on appeal, I conclude that the Family Court failed to make adequate findings as to DHS's allegations and evidence of RN's domestic abuse, illegal drug use, and practice of sexual bondage in his home. Further, I conclude that the record in this foster custody proceeding is incomplete given the Family Court's reliance on its rulings in RN's separate proceeding seeking guardianship of LLR, which are not in the record. In this regard, I dissent. I would vacate the Order Revoking Jurisdiction and remand the case to the Family Court.

At minimum, the Family Court should make more than conclusory findings to address DHS's assertion that LLR's physical or psychological health or welfare is subject to harm by RN's alleged domestic violence, illegal drug use, and practice of sexual bondage in his home. Further, because the Family Court's rulings in this foster custody case refer to and apparently were a direct consequence of its rulings in RN's separate proceeding seeking guardianship of LLR, I believe the Family Court should supplement the record in this case with the records in RN's guardianship proceeding. Without these other records, I do not believe the Family Court's rulings can be properly reviewed, including its decision to revoke its jurisdiction over DHS's petition for foster custody of LLR.

### Background and Relevant Proceedings

Mother and RN previously were in a relationship and they have a child together, LR, who is LLR's half-sibling.[2] RN

---

[2] Certain proceedings below dealt with both LLR and LR. There was a separate appeal related to LR. Thus, I only address matters as to LLR herein.

is not LLR's father. Although there are no specific findings in our record, it appears that LLR and Mother had lived with RN for some period of time.[3]

On March 9, 2016, the Family Court issued an "Order Continuing Temporary Foster Custody and Setting a Continued Contested [Jurisdiction] Hearing" related to LLR. The order scheduled a further pretrial hearing for March 14, 2016.

In a "Safe Family Home Report" (**DHS report**) filed on March 14, 2016, DHS states that its records "indicate a history of domestic violence between [RN] and [Mother]," which RN denied. The report also described RN's drug abuse. The DHS report recommended that "[f]oster custody of the child/ren be awarded" because the "family home is unsafe at this time, even with the assistance of a service plan."

At the March 14, 2016 hearing, and as set forth in an order issued on March 21, 2016, Mother stipulated to jurisdiction granting foster custody for LLR. The written order stated that "[p]ursuant to HRS §587-63(a)/587A-5" there was an adequate basis to sustain the petition in that LLR's physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions of the child's family, to wit, "maternal mental health, domestic violence, and alleged sexual abuse by [RN], and alleged substance abuse by [RN]." The Family Court set trial to commence on April 22, 2016.

Trial lasted five days, commencing on April 22, 2016, and continuing on April 25 and 29, and May 2 and 6, 2016. On the final day of trial, the Family Court discussed its ruling. Based on a preponderance of the evidence standard, the Family Court found that RN had not harmed LLR or her physical or psychological health or welfare. However, the Family Court also

---

[3] RN testified that Mother and LLR moved into his home in 2011 and remained until approximately May 2014. From the record, it appears that DHS has had involvement regarding LLR prior to the instant case. For this foster custody proceeding, LLR was brought into DHS custody in August 2015, after she was found disheveled and hungry with Mother, who was apparently in a state of mental disorder at the time.

addressed and denied RN's petition for guardianship of LLR,[4] stating:

> under these circumstances, the totality of the circumstances, even if I grant you guardianship of [LLR], the way that her mother feels and her grandmother feels, that will never change. We'll probably be back in court who knows how soon.
>
> So that's not in [LLR's] best interest and I have to use the best interest standard for that also.

On June 6, 2016, the Family Court issued an "Order Continuing Foster Custody and Setting a Return with Service Plan for Mother Hearing" (**6/6/16 Order**). The 6/6/16 Order stated, among other things, that: (1) "[RN's] petition for guardianship is denied"; (2) "DHS did not show by a preponderance of the evidence that [LLR's] physical or psychological health or welfare was subject to imminent harm by the allegations of alleged sex abuse, alleged domestic violence, and alleged substance abuse by [RN]"; and (3) LLR's grandmother's "petition for guardianship is denied".

Subsequently, however, on July 27, 2016, the Family Court issued its Order Revoking Jurisdiction in the foster custody proceeding, apparently based solely on its review and determination of a motion for reconsideration filed by RN in the guardianship case.[5] The Order Revoking Jurisdiction states that a "hearing on [RN's] Motion to Reconsider was held on July 1, 2016[.]" The order then concludes that: "The court finds that it is in the best interest of [LLR] to grant guardianship of [LLR] to [RN], in the guardianship case FC-G No. 15-1-0061[,] and his Motion to Reconsider was granted. Therefore, the Court revokes jurisdiction and foster custody of [LLR] and dismisses this case." (Emphasis added.) Significantly, neither RN's motion to reconsider in the guardianship proceedings nor the transcript

---

[4] Apparently referring to RN's guardianship case, FC-G No. 15-1-0061.

[5] The caption for the Order Revoking Jurisdiction only references the foster custody proceeding, FC-S No. 15-1-0109.

from the referenced July 1, 2016 hearing are included in the record on appeal.

On December 2, 2016, the Family Court issued its FOFs/COLs/Order. Again, the Family Court referenced the hearing on July 1, 2016,[6] related to RN's motion for reconsideration filed in the guardianship proceeding (FC-G No. 15-1-0061), as part of the basis for its ruling. The Family Court made a conclusory finding that, "[b]ased on a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court finds that [RN] has not harmed L.R.'s and/or L.L.R.'s physical or psychological health or welfare, or subjected them to threatened harm by any acts or omissions." However, the Family Court's other findings only addressed LLR's disclosures that RN had sexually abused her and the Family Court's findings on that issue that LLR's disclosures were not reliable. The Family Court did not make any findings as to DHS's allegations of RN's domestic violence, illegal drug use, or practice of sexual bondage in his home. The Family Court ultimately made three conclusions of law:

1. Based upon a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court concludes that DHS has failed to prove, pursuant to Hawai'i's Child Protective Act, Haw. Rev. Stat. § 587A-5, that [RN] has harmed L.R.'s and/or L.L.R.'s physical or psychological health or welfare, or subjected them to threatened harm by any acts or omissions.

2. Based upon a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court concludes that [RN] poses no sexual risk to L.R. or L.L.R.

3. Based upon a preponderance of the evidence standard, and upon the credible evidence and totality of the circumstances, the court concludes that it is in the best interest of L.L.R. that [RN] be appointed as her guardian.

---

[6] The FOFs/COLs/Order contains a typographical error stating the date of the hearing as "July 1, 2006" instead of 2016.

5

## Discussion

This appeal arises from the proceedings related to DHS's petition for foster custody of LLR in FC-S No. 15-1-0109.[7] According to Hawai'i Family Court Rules (**HFCR**) Rule 1.1(5), cases with the prefix "FC-S" are classified as "Actions for Orders under the Child Protective Act."[8] Under the Child Protective Act, the Family Court has exclusive original jurisdiction as follows:

> **§587A-5 Jurisdiction.** Pursuant to section 571-11(9), the court shall have exclusive original jurisdiction:
> (1)  In a child protective proceeding concerning any child who is or was found within the State at the time specified facts and circumstances occurred, are discovered, or are reported to the department. These facts and circumstances constitute the basis for the court's finding that <u>the child's physical or psychological health or welfare is subject to imminent harm, has been harmed, or is subject to threatened harm by the acts or omissions of the child's family</u>; and
> (2)  In any prior child protective proceeding under chapter 587, the former Child Protective Act.

Hawaii Revised Statutes (**HRS**) § 587A-5 (Supp. 2016) (emphasis added). The stated purpose of the Child Protective Act includes, in relevant part, that: "[t]his chapter creates within the jurisdiction of the family court a child protective act to make paramount the safety and health of children who have been harmed or are in life circumstances that threaten harm." HRS §587A-2 (Supp. 2016). Moreover, "[t]his chapter shall be liberally construed to serve the best interests of the children affected and the purpose and policies set forth herein." Id.

Family Court cases designated with the prefix "FC-G" relate to "Guardianships of the Person of Minors or Incapacitated Adults." HFCR Rule 1.1(8). Such proceedings as to minors are governed by HRS Chapter 560, Article V, Part 2 (Guardianship of

---

[7]  It appears from the existing record that there were concurrent proceedings in the Family Court involving: LLR's grandmother's petition for guardianship of LLR, FC-G No. 15-1-0060; and RN's petition for guardianship of LLR, FC-G No. 15-1-0061. These guardianship cases are not part of this appeal.

[8]  The Child Protective Act is set forth in HRS Chapter 587A (Supp. 2016).

Minor). HRS § 560:5-204 (2006 & Supp. 2016) provides in relevant part:

§560:5-204 **Judicial appointment of guardian; conditions for appointment.** (a) A minor or a person interested in the welfare of a minor may petition for appointment of a guardian.

(b) The court may appoint a guardian for a minor if the court finds the appointment is in the minor's best interest, and:

(1) The parents consent;

(2) All parental rights have been terminated; or

(3) The parents are unwilling or unable to exercise their parental rights.

The court shall make the guardianship appointment if "it finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the conditions of section 560:5-204(b) have been met, and the best interest of the minor will be served by the appointment." HRS § 560:5-205 (2006 & Supp. 2016).

Given the above, proceedings under the Child Protective Act and proceedings for judicial appointment of a guardian have distinct standards applicable to each. Relevant issues may overlap, but these proceedings do not necessarily involve identical concerns.

In this case, as authorized under HFCR Rule 52, it appears the Family Court prepared its FOFs/COLs/Order after the appeal was filed. As noted, I believe the Family Court did not sufficiently address the issues of RN's alleged domestic violence, illegal drug use, or practice of sexual bondage in his home. These issues were raised by DHS and others, and testimony was presented during the course of the five-day trial on these issues. Separate and apart from whether RN sexually abused LLR, these other issues are relevant to whether the Family Court should have retained jurisdiction under the Child Protective Act and specifically HRS § 587A-5. In its oral ruling at the end of trial, the Family Court made oblique references to these issues, but no relevant findings. Similarly, in the FOFs/COLs/Order, these issues were not discussed. Given the purpose of the Child Protective Act, I conclude that these issues were not adequately addressed. The Family Court should make findings sufficient to

permit meaningful appellate review.  See e.g., P.O. v. J.S., 139 Hawai'i 434, 443, 393 P.3d 986, 995 (2017); Gordon v. Gordon, 135 Hawai'i 340, 351, 350 P.3d 1008, 1019 (2015); In the Interest of Doe, 61 Haw. 48, 54-55, 594 P.2d 1084, 1089 (1979).

Furthermore, despite finding at trial that it was not in LLR's best interest for RN to be appointed as her guardian and denying guardianship to RN at trial and in the 6/6/16 Order, the Family Court later issued its Order Revoking Jurisdiction and FOFs/COLs/Order holding the opposite.  In both the Order Revoking Jurisdiction and the FOFs/COLs/Order, the Family Court cited the July 1, 2016 hearing on RN's motion to reconsider his petition for guardianship as a basis for its decision.  RN's motion to reconsider and the transcript for the July 1, 2016 hearing are not included in the record for the instant appeal.  Overall, except for a few documents that reference RN's guardianship case, the instant record does not include the documents from RN's guardianship case.  Thus, I am unable to discern why the Family Court changed its ruling as to RN's guardianship of LLR, whether and how the decisions in the guardianship proceeding were relevant to the foster custody proceeding, and thus whether it was proper for the Family Court to have revoked its jurisdiction as to foster custody of LLR.

In short, without the record in RN's guardianship case (FC-G No. 15-1-0061), I conclude that the record on appeal is insufficient to review the Family Court's Order Revoking Jurisdiction.

### Conclusion

For these reasons, I would vacate the Order Revoking Jurisdiction and remand for specific findings on the issues of RN's alleged domestic violence, illegal drug use, and practice of sexual bondage in his home.  For any subsequent appeal, I would have the Family Court supplement the record in this case to include the records in RN's guardianship case.